THE PEOPLE OF THE STATE OF NEW YORK ex rel. SIDNEY SANDNES, Relator, *v.* SHERIFF OF KINGS COUNTY OF THE STATE OF NEW YORK and the WARDEN OF THE COUNTY JAIL OF THE COUNTY OF KINGS, STATE OF NEW YORK, Respondents.

WHEELER SHIPYARD, INC., Plaintiff, *v.* JOHN GREEN, Individually and as President of the Industrial Union of Marine and Shipbuilding Workers of America, and Others, Defendants.

Supreme Court, Special Term, New York County, September 1, 1937.

*Hyman N. Glickstein* [*Benjamin Algase* and *Leonard B. Boudin* of counsel], for the relator.

*Osmond K. Fraenkel,* for New York City Committee of the American Civil Liberties Union, as *amicus curiæ.*

*Liebman, Robbins, Pressman & Leider,* for the Committee for Industrial Organization, *amici curiæ.*

*Charlton Ogburn,* for the American Federation of Labor, as *amicus curiæ.*

*Louis B. Boudin* [*Irving Robert Feinberg* of counsel], for various labor unions, as *amicus curiæ.*

*Elizabeth Stern,* for the Wheeler Shipyard, Inc.

PECORA, J. By order of this court made at Special Term, Part 2, in Kings county on July 16, 1937, the relator was found guilty of contempt of court, and sentenced to imprisonment for thirty days for an alleged violation of a temporary injunction order which had been issued in the action above referred to by the same learned justice on July 12, 1937. An application for a stay of execution was denied, and the relator's imprisonment was directed

to commence forthwith. On the following day a writ of habeas corpus was obtained from this court and the relator was admitted to bail pending the decision herein.

In this proceeding an attack is made upon the power and jurisdiction of the court in issuing the original injunction order, as well as upon its power to punish for contempt, without conforming to the provisions respectively of section 876 of the Civil Practice Act and section 753-a of the Judiciary Law. In addition to these two main contentions, certain fatal defects in the order of commitment are claimed to exist. These will be discussed hereinafter.

This court is required in this habeas corpus proceeding to make inquiry into the power and jurisdiction of the court which issued the mandate. (Civ. Prac. Act, § 1253, subd. 1.) If the learned justice exceeded his jurisdiction in granting the temporary injunction, such injunction would be void, and the relator could not be committed for contempt for its violation. In *People ex rel. Tweed* v. *Liscomb* (60 N. Y. 559) the court (at p. 568) said: " It matters not what the general powers and jurisdiction of a court may be; if it act without authority in the particular case, its judgments and orders are mere nullities, not voidable, but simply void, protecting no one acting under them, and constituting no hindrance to the prosecution of any right."

So too in *Ex Parte Fisk* (113 U. S. 713) the court said (at p. 718): " When, however, a court of the United States undertakes, by its process of contempt, to punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for contempt is equally void. It is well settled now, in the jurisprudence of this court, that when the proceeding for contempt in such a case results in imprisonment, this court will, by its writ of habeas corpus, discharge the prisoner."

The inquiry, however, relates solely to the *power* of the court which issued the injunction, and not as to the *propriety* of the order. If the court had authority to grant the injunction, even though it may have been in error, the order would have to be obeyed. Escape from it would have to be sought in vacating, modifying or appealing from it.

The power to issue temporary injunctions is granted by the Legislature, and is not inherently a part of the jurisdiction of a court of equity. (*Bachman* v. *Harrington*, 184 N. Y. 458, 462.) It follows that the Legislature may impose restrictions upon the exercise of that power. Section 882 of the Civil Practice Act, dealing with temporary restraining orders, provides: " The order may be granted only upon notice. Where an application for an

injunction is made upon notice, either before or after answer, the court or judge may enjoin the defendant until the hearing and decision of the application; but only upon such notice as the court or judge, in its or his discretion, may direct."

The evidence adduced before this court in this proceeding clearly establishes that section 882 of the Civil Practice Act was not complied with, and that the injunction order was issued without the requisite notice. The facts with respect thereto are these: On July 9, 1937, certain members of the Industrial Union of Marine and Shipbuilding Workers of America and of Local 13 of that union, were served with a summons and complaint in the above action, together with a notice that " an order to show cause for an injunction *pendente lite* will be submitted for signature to the Justice presiding at Special Term, Part 2 * * * on the 12th of July." On July 12, 1937, the learned justice not only signed the order to show cause why a temporary injunction should not issue, but without further notice proceeded to hold an *ex parte* hearing, at the conclusion of which he issued the temporary injunction involved herein. The notice served upon the members of the union was not the notice required by section 882 of the Civil Practice Act. It was merely that at a certain time an order to show cause would be submitted for signature. In fact attached to this form of notice was an unsigned order to show cause which contained therein a blank space as to the time when such notice would have to be served. In *Stuhmer & Co.* v. *Korman* (235 App. Div. 856) a restraining order was vacated, the court saying: " The notice contemplated by section 882 of the Civil Practice Act * * * is a formal notice of the application in the action pending * * * returnable forthwith or at such time as the judge or court may direct, in the discretion of the court or judge, the exercise of such discretion and the service of the notice to be incorporated in an order by the court or judge, *a copy of which order is to be served with the notice.*" (Italics mine.)

In the instant case the order to show cause *was never served upon any one after it was signed.* Furthermore, although signed on July 12, 1937, the show cause order contained a provision that notice be given on or before July 9, 1937. The temporary injunction, having been granted without notice, the court which issued it exceeded its power. This was not only error but rendered the injunction void. (See *Ciancimino* v. *Man*, 1 Misc. 121, 124.)

In addition the injunction order was void because it was issued in a case governed by section 876-a of the Civil Practice Act, without compliance with the conditions precedent to give the court jurisdiction in such cases. Section 876-a, subdivision 1,

limits the jurisdiction of a court or judge to issue injunctions " in any case involving or growing out of a labor dispute, as hereinafter defined." A " labor dispute " is defined in subdivision 10 of that section. The injunction order herein contained the following statement: " It appearing from the testimony of Eugene M. Wheeler, Dominico Gilberto, Lawrence Leach, and Anthony Minikino that no strike or labor dispute of any kind whatsoever, within the meaning of Section 876-a of the Civil Practice Act, existed or now exists in the plaintiff's shipyards."

Since the determination of whether that case involved or grew out of a labor dispute constitutes the very essence of the question as to whether the court had jurisdiction, it is proper upon this habeas corpus proceeding to examine into the facts upon which jurisdiction was assumed. Jurisdiction is not conferred merely by a judicial or other assertion. It must have a basis in law and in fact, before power dependent upon conditions may lawfully be exercised. Inquiry into the question of jurisdiction is not precluded by a mere recital of its existence. (*People ex rel. Tweed* v. *Liscomb, supra; People* v. *Cassels,* 5 Hill, 164, 168; *People ex rel. Hackley* v. *Kelly,* 24 N. Y. 74; *Matter of Depue,* 185 id. 60; *People ex rel. Schoen* v. *Murphy,* 243 App. Div. 216.) In the well-known *Tweed* case (*supra*) the court said: " In *People* v. *Cassels* (5 Hill, 164) the court, by BRONSON, J., say that the prisoner had an undoubted right, when brought before the commissioner on habeas corpus, to show that the committing magistrate acted without authority, notwithstanding the commitment recites the necessary facts to give jurisdiction; that no court or officer can acquire jurisdiction by the mere assertion of it."

This rule is most salutary and bedrocked upon sound reason, since the efficacy of the writ of habeas corpus could be destroyed by a baseless finding by the court which issued the mandate that it had jurisdiction. (See *Bell* v. *Bell,* 181 U. S. 175; *Rose* v. *Himely,* 4 Cranch, 241, 269.)

The provisions of section 876-a of the Civil Practice Act are patterned upon the Norris-LaGuardia Act passed by Congress. The urgent need for control over the granting of injunctions in labor disputes arose from the well-known abuses which frequently attended the issuance of such *ex parte* restraining orders in the past. The social and economic gains made by the elimination of those abuses would be erased if a temporary injunction could be granted in disregard of that statute, simply by a judicial fiat that no labor dispute existed. The statute would be nullified. Its provisions would be emasculated. Courts, above all other institutions, must

ever display that complete respect for law which is best evidenced by a scrupulous observance of both its spirit and its letter.

When a lapse occurs with the resultant unlawful imprisonment of one, the most effective cure is by a writ of habeas corpus. The slow processes of appeal may bring relief so belatedly as to render it practically valueless.

The evidence in this proceeding indicates beyond every shadow of doubt that a " labor dispute " was and is involved in the injunctive action brought herein, as such term is defined in subdivision 10 of section 876-a. (See *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Nann* v. *Raimist,* 253 id. 307; *Stilwell Theatre, Inc.,* v. *Kaplan,* 259 id. 405.) The complaint itself among other things alleges the picketing by the union members, the attendance of some of plaintiff's employees at a union meeting, the failure of a substantial number of the plaintiff's employees to report for work, and the presentation of certain demands to plaintiff by and in behalf of its employees. The mere fact that the complaint charges that the action of the employees was induced by fraud, does not alter the character of the dispute. Furthermore, the affidavits annexed to the plaintiff's order to show cause incontrovertibly prove the existence of a labor dispute and of a controversy arising out of the respective interests of employer and employee. In addition, witnesses testified at the hearings upon the writ of habeas corpus that, on June 21, 1937, over 300 employees of the plaintiff went on strike.

The very terms of the injunction order — enjoining acts of picketing, striking, etc.— are consistent only with the existence of a controversy amounting to or involving a labor dispute. They bear eloquent testimony in complete negation of the finding. All these facts — the evidences of which are partly documentary — are so pronounced that they cannot by any means be made to appear to be anything else. The suave artistry of legerdemain has its uses in the theatre to mystify and beguile to the point of healthy amusement, but it can be of no avail in the courtroom as a basis for factual determination.

The case before the learned justice at the Kings County Special Term, by every consideration of the evidence, involved or grew out of a labor dispute. Hence the court had no power or jurisdiction to issue any injunction unless the provisions of section 876-a of the Civil Practice Act were complied with. Such compliance was wholly lacking. Subdivision 4 of section 876-a provides: " No injunctive relief shall be granted to any plaintiff who has failed to plead and prove compliance with all obligations imposed by

law which are involved in the labor dispute in question, or who has failed to allege and prove that he has made every reasonable effort to settle such dispute either by negotiation or with the aid of any machinery of mediation or voluntary arbitration, provided for by law of contract between the parties."

The complaint here fails to allege facts showing the plaintiff made any reasonable effort to settle the dispute. This court has held that the mere allegation in the words of the statute when pleading the facts is insufficient. (*Intern Co., Inc.,* v. *Goldberg,* N. Y. L. J. Aug. 26, 1936, p. 516; *Buchsbaum & Sons, Inc.,* v. *Doe,* Id. Sept. 26, 1936, p. 867; *Bill's Gay Nineties, Inc.,* v. *Obermeyer,* Id. July 18, 1936, p. 180; *Kirschner* v. *Rappaport,* Id. June 26, 1936, and July 9, 1936, p. 89; *Pappas* v. *Burke,* Id., March 11, 1937, p. 1225; *Stanley* v. *Peabody Coal Co.,* 5 F. Supp. 612.)

Furthermore, the complaint fails to allege facts upon which the conclusion required by section 876-a (Subd. 1, ¶ e) could be based, namely, " that the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection."

Again, it was admitted in this proceeding that no verified bill of particulars was served in the action. Under subdivision 2 of section 876-a, a hearing on an application for an injunction *pendente lite* can take place only after a verified bill of particulars is served.

Moreover, subdivision 1 of section 876-a provides that no injunction may be issued in a case involving a labor dispute except " after findings " of fact have been made by the court and filed in the record of the case. The learned justice at Special Term in Kings county made no such findings of fact, nor were any such findings filed.

Reference has already been made to the failure to give notice under section 882 of the Civil Practice Act. Likewise the notice required by subdivision 2 of section 876-a was not given. It is there expressly provided that a hearing shall be held only " after due and personal notice, in such manner as the court shall direct, has been given to all known persons against whom relief is sought."

In view of the conclusion that the injunction order was void because of non-compliance with the provisions of section 876-a of the Civil Practice Act, there is no need to discuss the scope of the injunction which restrained picketing and striking. Suffice it to say that the right to strike is clearly preserved both in the National and New York State Labor Relations Acts and the right to picket is expressly granted by subdivision 5 of section 876-a of the Civil Practice Act.

It would seem that such definitely granted rights cannot be taken away by a temporary injunction, without usurpation of power. The injunction being void, no commitment based upon a contempt for its violation can be upheld.

Other reasons exist why this writ of habeas corpus must be sustained and the relator discharged. The power of a court to punish for contempt for violation of an injunction order granted in any case involving or growing out of a labor dispute has been circumscribed and limited by section 753-a of the Judiciary Law and section 882-a of the Civil Practice Act and subdivision 4 of section 600 of the Penal Law. The person charged with contempt in such cases is entitled as a matter of right to a jury trial. The relator was denied this right, although he specifically demanded it, upon the ground that the court had already decided that no labor dispute was involved. The learned court which held the relator in contempt unlawfully refused to take testimony on this question. Its refusal was based upon a " finding " which was never made in accordance with the requirements of the statute, and which ran counter to all the facts in the case. The contempt proceeding clearly arose in a case involving a labor dispute, as we have already seen. Moreover, since the contempt proceeding was a special proceeding, entirely independent of the action in which the injunction was issued (*Matter of Depue,* 185 N. Y. 60; *Erie Railway Co.* v. *Ramsay,* 45 id. 637; *Eastern C. S. Co.* v. *B. & M. P. I. U.,* 200 App. Div. 714; *Matter of Douglas* v. *Adel,* 269 N. Y. 144), the relator was entitled as a matter of right to have the issue of the existence of a labor dispute specifically determined in the contempt proceeding, particularly since he was not a party to the original action. The failure of the learned court to determine the question *de novo* in the contempt proceeding deprived the relator of his right to a trial by jury, and rendered the contempt void, and imperatively requires that the writ of habeas corpus be sustained. (*People ex rel. Sarlay* v. *Pope,* 230 App. Div. 649, 651; *People ex rel. Thornwell* v. *Heacox,* 231 id. 617; *Briddon* v. *Briddon,* 229 N. Y. 452; *Matter of Douglas* v. *Adel,* 269 id. 144.)

It does not appear whether the contempt charged is in the nature of a criminal or a civil contempt. In any event, an order for commitment must state the circumstances of the contempt. The order here fails so to do. It is insufficient merely to assert the legal conclusion that the relator violated, or instigated the violation of, the mandate of the court. (Judiciary Law, § 752; *Matter of Waldman* v. *Churchill,* 262 N. Y. 247; *Briddon* v. *Briddon, supra; Matter of Tri-State Investors Corp.* v. *Kitching,* 231 App. Div. 143; *Matter of Gordon* v. *Feldberg,* 149 id. 246; *Matter of Depue, supra.*)

Furthermore, if considered as an order holding the relator for a criminal contempt, the order is defective in failing to allege that the contempt was " willful." (Judiciary Law, § 750, subds. 3, 4.) On the other hand, if the commitment is regarded as one for a civil contempt, the order is equally defective in its failure to recite that the alleged offense was calculated to, or actually did, impair, impede or prejudice the rights and remedies of the plaintiff. This is a fatal defect rendering the order void. (Judiciary Law, § 753; *Dailey* v. *Fenton*, 47 App. Div. 418; *Matter of Ryan*, 73 id. 137; *Matter of Tri-State Investors Corp.* v. *Kitching, supra; Eastern C. S. Co.* v. *B. & M. P. I. U., supra; Feinberg* v. *Kutcosky*, 147 App. Div. 393.)

The writ of habeas corpus is, therefore, sustained and the relator is discharged.