FAIRFIELD BAR & RESTAURANT, INC., Plaintiff, *v.* SAM FRIEDMAN, etc., and Another, Defendants.

Supreme Court, Special Term, New York County, October 5, 1939.

*David E. Winer* and *Lawrence J. Lieberman,* for the plaintiff.

*Drazen & Drazen* [*Joseph D. Drazen* of counsel], for the defendants.

PECORA, J. Plaintiff, the owner of a restaurant, applies for a temporary injunction restraining the defendants from picketing in front of and in the vicinity of its establishment. The application is made on the conventional papers customarily used on motions for temporary injunctions in equity causes. The defendants claim that the controversy here is a " labor dispute " within the meaning of section 876-a of the Civil Practice Act, and that pursuant to that section the court is precluded from granting injunctive relief upon mere affidavits. Defendants urge that inasmuch as plaintiff has failed to comply with the procedural requirements of that section, the court is prevented from considering the matter, and that the motion must be denied. (*Krip Holding Corp.* v. *Canavan,* 159 Misc. 3.) The plaintiff attempts to meet the objection by asserting that the differences between the parties, assuming that any exist,

do not constitute a labor dispute and that, hence, the provisions of that section are not applicable.

In support of its contention plaintiff avers that none of its employees is on strike, and that no complaint has been made by them concerning wages or working conditions. Plaintiff further claims that its help do not desire defendants' union to represent them as their collective bargaining agency, and that plaintiff's refusal to sign a contract with the union has resulted in a picketing of plaintiff's place of business. The defendants aver that several conferences were held between the union's officials and plaintiff's officers respecting the negotiation of a contract, prior to the opening of plaintiff's restaurant, and that a tentative understanding was finally arrived at, which contemplated the execution of a contract on June 19, 1939; and that no agreement was signed on that day because the plaintiff refused definitely to commit itself — with the result that a picket line was installed for the purpose of compelling the plaintiff to employ union help. The papers are replete with related phases of the so-called negotiations, but the statement just made is the essence of the factual situation as it is presented.

The controlling question to be determined is whether this controversy is a " labor dispute " within the purview of section 876-a of the Civil Practice Act. That section (c) provides: " (c) The term ' labor dispute ' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee." This language is strikingly similar to that of the Norris-LaGuardia Act (47 U. S. Stat. at Large, p. 70; U. S. Code, tit. 29, § 101 *et seq.*) which served as a prototype for section 876-a. In *People ex rel. Sandnes* v. *Sheriff of Kings County* (164 Misc. 355) this court had occasion to remark: " The provisions of section 876-a of the Civil Practice Act are patterned upon the Norris-LaGuardia Act passed by Congress."

In *Lauf* v. *Shinner & Co.* (303 U. S. 323), which was a case embodying almost the precise factual elements here involved, the United States Supreme Court squarely held the controversy to be a " labor dispute " within the statutory meaning and intendment. That case concerned itself, among other things, with the interpretation of the Wisconsin Labor Act, which contained a provision not materially different from the Norris-La Guardia Act, nor from section 876-a of our Civil Practice Act. There, too, an injunction

was sought to restrain picketing and efforts on the part of a labor union to compel the employees, none of whom belonged to the union, to become members of it, and accept it as their bargaining agent; and from advertising that the employer was unfair to organized labor; and from molesting customers or prospective customers, or persuading them to withhold their patronage. The union's practices in that case were virtually identical with those pursued by the defendant here. Indeed, it is difficult to see wherein they differ, except perhaps in minor aspects.

Concededly opinions may vary as to the definition of the term " labor dispute," and I recognize the fact that conflicting views have heretofore been expressed by our courts seeming to narrow its definition. (*May's Furs & Ready-to-Wear, Inc.,* v. *John Doe,* N. Y. L. J. May 11, 1937, p. 2369; *Mme. Reif, Inc.,* v. *Randau,* 166 Misc. 247.) But in the light of the decision in *Lauf* v. *Shinner & Co.* (*supra*), the term must be broadly interpreted to include any controversy or dispute of the character disclosed on this application. It follows, therefore, that the motion must be denied.